# PHŒNIX CASTER COMPANY *v.* SPIEGEL.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF INDIANA.

No. 159. Argued December 10, 1889.—Decided March 3, 1890.

The claim of letters patent No. 190,152, granted May 1, 1877, to Alexander C. Martin, for an "improvement in furniture casters," namely, "The floor-wheels EE, the anti-friction pivot wheel F, the housing B, the elliptical housing opening, or its mechanical equivalent, and the rocker-formed collar bearing, or its mechanical equivalent, all combined so as to allow the floor-wheel axis to oscillate horizontally, substantially as and for the purpose specified," being a claim selected by the patentee in obedience to the requirements of the Patent Office, after an extended construction of it had been rejected, and being a combination of specified elements, must be limited to a combination of all such elements.

In view of the state of the art, the words in the claim, "the rocker-formed collar bearing, or its mechanical equivalent," must be restricted to such a bearing resting on a collar beneath the floor-wheel housing, as is shown in the Martin patent; and the claim does not cover a caster which does not have the collar of that patent, or its rocker-formed collar bearing or an equivalent therefor.

IN EQUITY to restrain infringements of letters patent.

The case is stated in the opinion.

*Mr. Charles P. Jacob* for appellant.

No appearance for appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity, brought in the Circuit Court of the United States for the District of Indiana, by the Phœnix Caster Company, an Indiana corporation, against Augustus Spiegel, Henry Frank and Frederick Thoms, to recover for the alleged infringement of letters patent No. 190,152, granted May 1, 1877, on an application filed September 16, 1876, to Alexander C. Martin, for an "improvement in furniture casters."

The specification, claim and drawings of the patent are as follows : " This invention relates to swivelling casters, and the objects of the invention are to secure in such casters freedom from pivotal wear of carpet or floor and increased mobility in swivelling. The first object is attained by the use of two floor-wheels whose axes are coincident, in connection with devices which insure the contact of both wheels with the floor, regardless of ordinary irregularities of floor surface. The second object of the invention is a natural result of the suppression of floor friction. In the accompanying drawing, Fig. 1 is an elevation of my improved caster. Part of Fig. 1 is a vertical section. Fig. 2 is a side elevation, and Fig. 3 is a part elevation, exhibiting the portion cut away in Fig. 1. Common casters, in swivelling, pivot upon the floor. The point of pivot motion is the point of contact between wheel and floor. Such pucker and wear carpets, and are sluggish in their swivelling action. Two rollers side by side will, in swivelling, turn in opposite directions, and it will be found that they roll upon the floor instead of pivoting, as does the single wheel ; but if the floor should be irregular, as is often the case, one wheel of the pair would not touch the floor, and the two-wheeled caster would become pratically a one-wheeled caster. My improvement consists in making the axis of the two wheels oscillatory with reference to the article to which the furniture caster is attached. The axis of oscillation, being at right angles to the floor-wheels' axis, allows the wheels to accommodate themselves to ordinary inequalities of floor. Referring to the drawing, A is a flange, from which depends the stem or boss C. This stem serves as a pivot for the swivelling motion, as a draft-pin for the wheel-housing, and as a means of uniting the parts. The housing B furnishes bearing supports for the two floor-wheels EE and the anti-friction pivot-wheel F. The latter wheel is situated centrally between and vertically above the floor-wheels. The housing swivels upon the stem in the usual manner. Were only a swivelling motion of the housing desired, its fit upon the central pivot might be close, allowing only looseness enough for the swivelling action ; but the object sought by my improvement demands that the

housing should have a compound motion with reference to the central pivot. It must revolve upon a vertical axis and oscillate upon a horizontal axis. This compound bearing is formed by making the housing bearing slightly elliptical and the housing collar bearing in rocker form, as shown in Fig. 3. The rocker may be on the side of the hole nearest the anti-friction wheel or on the opposite side, and the axis of the rocker should be in line with, and a continuation of, the axis of the anti-friction wheel F, so that the anti-friction wheel may not impede the oscillating motion. By means of the relief resulting from the elliptic nature of the housing opening and the rocker bearing, freedom for oscillation is secured without interfering with the functions of the central pivot as a bearing of rotation, draft-pin and means of union. I claim

Fig. 1.          Fig. 2.          Fig. 3.

as my invention, a furniture caster composed of the following elements: The floor-wheels EE, the anti-friction pivot-wheel F, the housing B, the elliptical housing opening or its mechanical equivalent, and the rocker-formed collar bearing or its mechanical equivalent, all combined so as to allow the floor-

wheel axis to oscillate horizontally, substantially as and for the purpose specified."

The answer sets up as defences want of novelty and non-infringement. After a replication, proofs were taken on both sides. The case was heard before Judge Woods, and a decree was entered which stated that the court found that there had been no infringement of the patent, and that the bill was dismissed, with costs. From this decree the plaintiff has appealed. The opinion of the court is reported in 26 Fed. Rep. 272.

The caster used and sold by the defendants was known as "the Yale caster," and was made at New Haven, Connecticut. The opinion of the court stated that the prior art was shown by reference to numerous earlier patents, both American and English, " which, it is alleged, anticipated the Martin combination entirely, or, at least, in so far as to impose upon it a strict construction, limiting it to the particular arrangement of parts described and excluding any pretence of infringement by the defendants." The opinion then proceeds as follows : "After a painstaking consideration of the evidence and accompanying models, the opinions of the experts, and the arguments and briefs of counsel, which upon both sides have been quite exhaustive, I am compelled to the conclusion that infringement has not been shown, and consequently that the bill must be dismissed. The combination of the patent in question accomplished no new result in mechanics, and differed from previous known combinations, designed for the same and like purposes, only in the construction of one or two of the parts, whereby, perhaps, a better but certainly not a different kind of result was accomplished than had been before effected. More than this cannot be justly claimed, as it seems to me. Besides, it appears that Martin's application for a patent was rejected and withdrawn two or more times, the examiner insisting, upon certain references, 'that all applicant's novelty in entire device is only expressed by words " as specified." ' In obedience to this ruling the claim, and perhaps the specification, was modified and the patent granted. It follows that the patent cannot now, by a liberal construction, be made to include anything

so denied by the Patent Office, and without this the device of the defendants cannot, I think, be said to infringe."

The claim of the patent is for a combination of the following elements : (1) the floor-wheels EE ; (2) the anti-friction pivot-wheel F; (3) the housing B ; (4) the elliptical housing opening, or its mechanical equivalent ; (5) the collar ; (6) the rocker-formed collar bearing, or its mechanical equivalent. All these are to be so combined as to allow the axis of the two floor-wheels to oscillate horizontally with reference to the article to which the caster is attached. The floor-wheels EE are mounted in a housing. This housing also furnishes bearing supports for an anti-friction pivot-wheel F, which latter wheel constitutes the principal bearing-surface between the floor-wheels' housing and the plate at the bottom of the piece of furniture, on which plate the anti-friction pivot-wheel travels in the swivelling movement of the caster. The collar, which is not referred to by letter in the specification, is marked D in figure 3 of the drawings. It sustains the downward pressure at the heel of the housing, which is that part most remote from the floor-wheels. The convex surface of the rocker-formed collar bearing, which is between the heel of the housing and the collar, is formed on the housing itself. There is an elliptical opening in the housing, in which the entire caster swivels, so as to permit its lateral oscillation. No one of the six elements above mentioned can be dispensed with, without departing from the invention specified in the claim of the patent. The collar is a necessary element in the combination specified in the claim, because there cannot be a rocker-formed collar bearing unless there be a collar.

A copy of the file wrapper and its contents, in the matter of the patent, is found in the record. The claims in the specification originally filed were as follows :

"First. The housing B, in combination with the anti-friction wheel F, and two or more floor-wheels, E, substantially as described.

"Second. The combination of the housing B, flange A, boss C, so arranged that the axis of rotation and oscillation of the housings shall intersect below the flange A, substantially as and for the purpose specified.

" Third. The combination of the flange A, boss C, and screw G, substantially as and for the purpose specified."

The application was rejected on the 27th of September; 1876, by a reference to four United States patents, the examiner saying that the invention claimed lacked apparently any element of patentable novelty, and adding, that, in view of those references, " and in the absence, as far as is perceived, of any new formation or showing of patentable improvement over them," the application was rejected.

The applicant then cancelled said three claims, and substituted for them the following, leaving the text of the specification to stand :

" In a furniture-caster, the combination of the above-described housing B with the anti-friction wheel F and floor-wheels EE, when the anti-friction wheel F is situated above and centrally between the floor-wheels EE, substantially as and for the purpose specified."

On the 5th of October, 1876, the Patent Office informed the applicant that it was not patentable to double the number of wheels which before existed, the examiner adding : " It would not, of course, be possible to re-patent all our devices used with a single wheel to every one who should put in two wheels instead of one."

The applicant then made amendments in his specification and drawings, and submitted his case again, with an argument, to which the Patent Office replied, on the 19th of October, 1876, that if the applicant would define, in his claim, his " housing B " as " having an elliptical opening bearing upon a point opposite to and farthest from the anti-friction wheel F," the case would pass all reference.

In reply to this, the applicant, on the 23d of October, 1876, substituted a new specification and claims for those already presented. The new claims were as follows:

" In a caster, the combination of the housing B, anti-friction wheel F, and floor-wheels EE, when the anti-friction wheel is located centrally between and vertically above the floor-wheels, for the purpose and substantially as specified.

" In a caster, the combination of the flange A, stem C,

housing B, and floor-wheels EE, so arranged that the axis of the floor-wheels may oscillate with reference to the plane of the flange A."

On the 26th of October, 1876, the examiner wrote to the applicant as follows: "The examiner, in official letter of 19th inst., suggested all he felt that he could possibly allow, considering the state of the art. Applicant's present amended first claim could not be allowed, as it is for just what in every letter the office has stated that it could not allow, viz., ' adding the usual friction roller in the usual way to two wheels, also old.' This is a mere double use. The second amended claim could not be allowed, even were applicant the first to use two wheels, for it is not for devices, but for a result or function (never patentable), applicant claims, ' so arranged that the axis may oscillate, etc.' A dozen inventions may do this, and yet not be equivalents of applicant's arrangement of devices, to which alone he is entitled. Just as stated in letter of 19th, the examiner thinks that in granting the claim there suggested he, if anything, errs on the liberal side."

In reply, the applicant, on the 31st of October, 1876, amended his specification and claim. The following paragraph was inserted in the specification : "It is also necessary that the housing should be capable of having a compound motion upon the central pivot. It must revolve upon a vertical axis and oscillate upon a horizontal axis. This compound bearing is formed by making the housing bearing slightly elliptical and making its collar bearing in rocker form, as shown in Fig. 3. The rocker may be on the side of the hole nearest the anti-friction wheel, or on the opposite side. By means of the described relief and rocker bearing, freedom for oscillation is secured, without interfering with the function of the pivot as a bearing of rotation, draft-pin, and means of union." The following claim was substituted for all previous claims: "In a caster, the floor-wheels, EE, and an anti-friction wheel, F, in the relative position specified, when combined with the housing B, having its pivot-bearing relieved as specified, or its mechanical equivalent, substantially as and for the purpose specified."

In reply, the examiner said, in a letter to the applicant dated November 15, 1876: "Part of applicant's claim reads as follows: 'having its pivot bearing relieved as specified, or its mechanical equivalent.' Applicant will see at once that all applicant's novelty in entire device is only expressed by words 'as specified.' This sort of claim has never been allowed, save through some error, since 1870. . . . Again, 'its mechanical equivalent' refers to no specified devices. One cannot say 'having a thing done so and so, or its mechanical equivalent.' Again, the specification says, 'One important feature of my invention is so and so,' and, 'a further improvement consists in,' etc. Applicant has one novelty only, and should be well aware that he should not still claim, in his nature of invention, the anti-friction wheel. Applicant should claim definitely his devices (which he includes in 'relieved as specified') and their equivalents, and change specification to correspond, as suggested. An appeal from the examiner, is, of course, proper at any time, but he can issue no patent unless the specification and claims, fairly and without ambiguity, only cover the novel device."

The applicant then, on the 17th of November, 1876, withdrew his existing specification and claim, and substituted those which are in the patent as issued, and it was granted.

It therefore appears, that while the applicant at first claimed a combination of merely three elements, namely, the housing, the anti-friction wheel, and the floor-wheels, he finally limited that combination by adding to those three elements the elliptical housing opening, the collar, and the rocker-formed collar bearing. When the applicant presented his original application, he evidently supposed that he was the first inventor of a two-wheeled caster in which the axis of the floor-wheels could oscillate relatively to the furniture leg. In his letter of October 26, 1876, the examiner criticised the second amended claim, namely, "in a caster, the combination of the flange A, stem C, housing B, and floor-wheels EE, so arranged that the axis of the floor-wheels may oscillate with reference to the plane of the flange A," as not being for devices, but for an arrangement so made that the axis of the

floor-wheels could oscillate, while the applicant was entitled only to his arrangement of devices. The combination of specified elements constituting such arrangement, selected by the applicant after all the correspondence between him and the Patent Office, is contained in the claim as granted.

It is well settled that where a patentee has modified his claim in obedience to the requirements of the Patent Office, he cannot have for it an extended construction which has been rejected by the Patent Office; and that, in a suit on his patent, his claim must be limited, where it is a combination of parts, to a combination of all the elements which he has included in his claim as necessarily constituting that combination. The authorities on the subject are collected in the case of *Roemer* v. *Peddie*, 132 U. S. 313, 317.

The defendants' caster is a two-wheeled caster, with two floor-wheels and two anti-friction wheels, one of the latter located on each side of the vertical plane of the axis of the floor-wheels, the attachment of the floor-wheel housing to the furniture-plate being through the medium of a pivot-pin which turns in the furniture-plate and is secured to the floor-wheel housing by the horizontal axis-pin of the anti-friction wheels, which axis-pin thus becomes the centre of oscillation for the caster. It is provided also with a hollow stud, formed in one piece with the furniture-plate and projecting downward therefrom, within which hollow stud the vertical swivelling-pin turns. It is wanting entirely in the collar of the Martin patent, at the bottom of the attaching stud, by which the caster-housing is secured to the furniture leg, to prevent its dropping when the furniture is lifted; and it is wanting also in Martin's "rocker-formed collar bearing," which rests upon the collar beneath it and forms one point of the axis of oscillation. The expert for the plaintiff concedes that he does not find in the Yale caster anything that in terms might be called a rocker-formed collar bearing, except so far as the pivot-pin, being permanent in the housing, might be said to be a part thereof.

In view of the state of the art, as shown by the various patents put in evidence, the words " the rocker-formed collar bearing,

or its mechanical equivalent," in the claim of the Martin pat-
ent, cannot embrace all modes of affording vertical support
between the floor-wheel housing and the furniture-plate, where-
by lateral oscillation of such housing is permitted; and those
words must be restricted to such a bearing resting on a collar
beneath the floor-wheel housing, as is shown in the Martin
patent. The housing in the Yale caster is not of a construction
similar to that described by Martin; and there is not in the
Yale caster any equivalent for such "rocker-formed collar
bearing;" nor is there any collar beneath the housing on which
such collar bearing can rest. The housing of the Martin patent
has an opening from top to bottom, through which the vertical
swivelling-stud of the furniture-plate passes; while the Yale
caster has no such opening, but only a recess or cavity in the
top of the housing, an arrangement which results from the use
in the Yale caster of a different mode from that of Martin, of
attaching the housing to the furniture-plate, by the substitu-
tion for the Martin stud and screw, and a collar held by the
screw beneath the housing, of a horizontal pin passing entirely
through the swivelling pintle of the housing, which pintle is
thus made to revolve with the housing, and turns in the fixed
furniture-plate, the horizontal pintle of the anti-friction wheels
being used for the attachment of the housing.

For these reasons we concur with the Circuit Court in its
view that infringement has not been established.

It is to be regretted that while this case was orally argued
on the part of the appellant, it was not so argued on the part
of the appellees, nor have we been furnished with any brief on
their part. This leads to the conclusion that, although the
decree dismissing the bill states that the plaintiff claimed his
appeal in open court and gave good and sufficient surety, and
that the appeal was accordingly allowed, the defendants, for
some reason, have not sufficient interest in the questions in-
volved to endeavor to sustain the decree. Perhaps the case,
as presented to us, is substantially a moot case; still, there is
nothing to show it, and the appellant, on the record, has a
right to have the questions he presents decided.

*Decree affirmed.*