VICTOR TALKING MACH. CO. et al. v. AMERICAN GRAPHOPHONE CO.

(Circuit Court, S. D. New York.   February 19, 1906.)

1. PATENTS—CONSTRUCTION OF CLAIMS.

The claims of a patent finally allowed and accepted by the patentee must be read in connection with the claims set forth in the original application and with the prior art, and cannot be construed to cover what was rejected or disclosed by prior devices.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 234, 236½.]

2. SAME—NOVELTY—PRODUCT OF OLD PROCESS.

If a process is old and well known, the product of such process must likewise be considered as old in a patentable sense, and is not patentable as a separate and distinct invention.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 42, 49.]

3. SAME—INFRINGEMENT—SOUND RECORDS.

The Berliner patent No. 548,623, for duplicate sound records and method of making the same, in view of the prior art and the proceedings in the patent office, must be limited as to the material of which the duplicate records are made to hard rubber, which is that specified in each claim as allowed.   As so contrued, *held* not infringed.

In Equity.

Horace Pettit, for complainants.

Elisha K. Camp, Philip Mauro, and C. A. L. Massie, for defendant.

HAZEL, District Judge.   This action was brought to prevent the infringement of letters patent No. 548,623, issued October 29, 1895, to Emil Berliner for sound record and method of making same.   Complainants are exclusive licensees and owners of the patent, which relates to a process of copying or duplicating what is commonly known as a zigzag or laterally undulating sound record.   Sound records of this type have a groove of even depth, as distinguished from sound records which have an uneven depth, and are peculiarly adapted for use with the talking machine known to the trade as the "Gramophone," of which Mr. Berliner was the inventor.   According to the specification and proofs, the sound records in controversy were manufactured of hard rubber.   Their shapes or forms were similar to a disk or tablet suitable for rotating.   The preferred form of the records of the prior art, as instanced by the Bell & Tainter patents, which expired in 1893, was cylindrical, and in operation they were fitted to a mandrel.   The sound records which are claimed to infringe complainant's records were manufactures of shellac and heavy earthy material, covered with lampblack.   In appearance they were similar to the sound records in suit.   The substances used by the defendant in the manufacture of the sound records are claimed by complainants to be the equivalent of hard rubber.   This proposition primarily requires a construction of the scope of the claims.   For convenience of comparison, all the claims of the patent are herein set forth:

"(1) The process of duplicating flat sound records, which consists in depositing copper or other like metal on an original record, then detaching the copper reverse thus produced, and facing the same with a layer of hard

metal, which is not attacked by sulphur, and then pressing the reverse into temporarily softened hard rubber, substantially as described.

"(2) The process of duplicating flat sound records, which consists in facing an electro-deposited reverse of a record with nickel or iron, then pressing this reverse into hard rubber, substantially as described.

"(3) As an article of manufacture, a sheet of hard rubber, having upon its face an undulatory groove of even depth, representing sound waves, substantially as described.

"(4) As an article of manufacture, a sheet of hard rubber, having pressed into its face an undulatory line of even depth, representing sound waves, substantially as described.

"(5) A copy of a flat sound record, which consists of a disk of hard rubber, having impressed upon its face the lines representing the record, substantially as described."

The first and second claims of the patent relate to the process of manufacture, while the third, fourth, and fifth relating to the product are the only ones which it is alleged the records of the defendant infringe. The defenses interposed are want of novelty, and, principally, a denial of infringement. The defendant contends that claims 3, 4, and 5 are free from indefiniteness or uncertainty, and that their scope is defined and limited by the action of the patent office and the prior art to the precise material of manufacture therein specified. On the other hand, the complaint insists that, considered in connection with the specification and prior state of the art, a broad construction of said claims is warranted. The specification describing the process says:

"My method is to cast the previously cleaned zinc-record disk in a cyanide of copper or cyanide of brass solution, electrolytically, by which a very thin film of copper or brass adheres to the zinc. After being thus prepared, the coated zinc disk is placed into a sulphate of copper bath, and copper deposited on it electrolytically. The deposit, when thick enough, is then detached, and forms an accurate matrix, showing the sound record of the zinc disk in reverse."

In speaking of the substances to be used for making a duplicate record, the specification says:

"This matrix can then be impressed into suitable material, and thereby produce exact duplicates of the original record-sheet. I have found hard rubber and celluloid to be excellent materials from which to make such duplicates. These substances when heated become very soft, and when in this soft state they are impressed with a matrix, such as above described. * * * In impressing a copper matrix on softened rubber, however, the sulphur fumes which are generated when heating the rubber attack the copper, and destroy the smoothness of its surface."

To protect the matrix from the sulphur fumes generated in heating the rubber, the patentee immersed the matrix in an iron or nickel bath, and by following the means detailed in the specification was enabled to manufacture a strong and durable sound record. The patentee was the inventor of the gramophone, an apparatus for recording and reproducing vibratory sound. The laterally undulating sound record used prior to the invention in suit was made from an original etched zinc plate, and when the rotating record came in contact with the so-called "stylus point," vocal sound was produced. A detailed description of the Berliner talking machine, which was invented in the year 1887, is unnecessary, for in this action we are concerned simply with the product of a process for making the sound records. The applica-

tion for the patent in suit as originally filed on March 18, 1893, was several times rejected by two different examiners, because the process claims were broad in scope, in that they provided for the use of "a material which is hard in a cold state, but soft and yielding in a warm state;" but the claims, which in terms were restricted to hard rubber, were unobjectionable. The examiners in disallowing the original claims cited the patents of Edison, No. 382,419, dated May 8, 1888, and Herrington, No. 399,265, of March 12, 1889, to show that it was old "to make an impression of any design upon a blank of hard rubber, the surface of which had previously been rendered soft and compressible by heat." Afterward the specification describing a process of impressing the matrix into blank sheets of impressible substance was amended by the applicant, and the patent was allowed. It is not claimed that the patentee was the original inventor of a process for duplicating sound records. In the patent to Edison, No. 200,521, dated February 19, 1878, for improvement in phonograph, a method is described of multiplying copies of a sound record by a stereotyping process, and in the later patent to Edison, cited by the examiner, a method of duplicating records of phonogram blanks by impressing a wax composition is described. In the patent of Herrington, which was for a process of duplicating phonograms, the specification refers to a cylinder coated with wax, resin, pitch, celluloid, glue, rubber, or some equivalent material, which may be so softened, by means of heat or otherwise, in order to retain the impression of the record. Although the Herrington patent related to a cylindrical record, it nevertheless showed that it was old at the date of the invention in suit to use an impressible substance for making sound records. In accordance with the views of the patent office, as indicated by the file wrapper and contents, the patentee accepted narrower claims than those originally contained in his application.

The principal question is whether the accepted claims entitled the complainant to cover a sound record having undulatory grooves of uniform depth, manufactured of shellac and baryta, or whether the patentee strictly limited himself to the use of hard rubber in the manufacture of the patented article. The law is well settled that the claims finally allowed and accepted by the patentee must be read in connection with the claims set forth in the original application. In Hubbell v. United States, 179 U. S. 80, 21 Sup. Ct. 28, 45 L. Ed. 100, the Supreme Court says:

"The claims as allowed must be read and interpreted with reference to the rejected claim and to the prior state of the art, and cannot be so construed as to cover either what was rejected by the patent office or disclosed by proper devices."

To a similar effect, see Royer v. Coupe, 146 U. S. 532, 13 Sup. Ct. 166, 36 L. Ed. 1073; White v. Dunbar, 119 U. S. 51, 7 Sup. Ct. 72, 30 L. Ed. 303; Shepard v. Carrigan, 116 U. S. 593, 6 Sup. Ct. 493, 29 L. Ed. 723; Phœnix Caster Co. v. Spiegel, 133 U. S. 368, 10 Sup. Ct. 409, 33 L. Ed. 663; Wheaton v. Norton, 70 Fed. 833, 17 C. C. A. 447; Leggett v. Avery, 101 U. S. 256, 25 L. Ed. 865. In Brill v. Car Co., 90 Fed. 667, 33 C. C. A. 213, the court says:

"It is immaterial, we think, whether the patent office was right or wrong in rejecting the complainant's original claims on the ground that the invention therein described was anticipated by the prior art. By amending his specification and claims the complainant admitted, in effect, that some limitation was necessary, and it is now too late to assert that he was entitled to his original claims, or that the claims as finally allowed are as broad as his original claims."

These authorities are thought to control the construction of the claims in question. An examination of the file wrapper and state of the art indicates that the claims, in the absence of any ambiguity, must be limited to that which was explicitly claimed. Each of the claims plainly refers to "a sheet or disk of hard rubber," which has pressed into its face an undulatory groove of even depth, representing sound waves. As said, it was not new to impress records representing sound waves into a plastic material, nor was it new to thus impress the zigzag record of Berliner. Complainants' contention that the disclaimers in the patent office related simply to the process, and not to the product, is thought, in view of the prior art, to be unsound. It has been held that, while a new process for producing the old article (alizarine) was patentable, the product could not be patented. Cochrane v. Badische, 111 U. S. 293, 4 Sup. Ct. 455, 28 L. Ed. 433. Apparently, then, if the process is old and well known, the article produced by that process likewise must be considered as old in a patentable sense, and accordingly it cannot be regarded as a separate and distinct invention. See Ex parte Hines, 60 O. G. 576; Ex parte Demeny, 64 O. G. 1649. It is true that words were used in the specification of the patent in suit which lend color, perhaps, to the argument of complainants. Portions of the specification describing the process read thus:

"This matrix can then be impressed into suitable material. * * *" "I have found hard rubber and celluloid to be excellent materials from which to make such duplicates." "These substances when heated become very soft, and when in this soft state they are impressed with a matrix, such as above described, and are cooled while still under pressure." "Referring to the drawings, there is shown a disk, I, of hard rubber or like material."

These quoted expressions, however, in my mind, are an acknowledgment of the state of the art, namely, that the sound records can be manufactured of different materials or substances. It is manifest, however, that what the patentee desired to protect was a sound record of hard rubber, as distinguished from a sound record made of other material. Such, I think, was the essence of claims 3, 4, and 5. Concededly, hard rubber and celluloid were excellent materials from which copies of the zigzag sound records could be made, but in making them the copper matrix was impressed on the softened rubber, and the sulphur fumes which were generated attacked the copper, and destroyed the smoothness of its surface. In this situation the problem, evidently, was to overcome or dissipate the harmful effects of the sulphur fumes upon the copper matrix. This was accomplished, as already stated, by coating the copper matrix with substances which would withstand the sulphur fumes. Although other suitable materials for making the sound records were familiarly known, yet the

efficiency and advantage of hard rubber for duplicating sound records according to the patentee's process was unknown, and hence the explicit claims covering the product of his invention.

Counsel for complainants invoke the doctrine of equivalents, and insist that the principle of Frost v. Cohn, 119 Fed. 505, 56 C. C. A. 185, is decisive of the question of equivalency presented here. To this proposition I must withhold my assent. There is a wide dissimilarity, in my opinion, between the specification and claims in suit and the specification and claims in the Frost Case. There the specification, in express terms, showed an intention by the patentee to include as an equivalent any other substances adapted to prevent the button from slipping, "and having characteristics similar to rubber, and adapted to the same use." Nor were the claims restricted to the material mentioned by the action of the patent office; the patentee agreeing to such restriction. Similar reservations as were made in that case cannot be read into the claims under consideration. No useful purpose would be subserved by considering the other adjudications cited by counsel for complainants. The rule in the Frost Case, above referred to, would certainly control the disposition of the case at bar were it not for the fact that, in my judgment, the proof requires a strict construction of the claims in controversy. Any other construction would be an enlargement of them beyond their scope. The suggestion of want of novelty in view of the foregoing need not be considered. My conclusion is that in the manufacture of sound records the defendant does not embrace the material specified in claims 3, 4, and 5 of the patent in suit, and therefore is not an infringer of such claims. It follows that the complaint must be dismissed, with costs.