## JOHNSON FURNACE & ENGINEERING CO. v. WESTERN FURNACE CO. et al.

### (Circuit Court of Appeals, Eighth Circuit. March 28, 1910.)

### No. 2,824.

1. PATENTS (§ 129*)—ASSIGNMENTS—EFFECT AS ESTOPPEL.

   One who actively participates in the sale of a patent and receives a share of the proceeds, and all in privity with him, are estopped to deny its validity as against the purchaser or his assigns, and a corporation subsequently organized by him is so in privity with him and affected by such estoppel.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 182½–186; Dec. Dig. § 129.*]

2. PATENTS (§ 93*)—PERSONS ENTITLED TO PATENTS—CORPORATION AND OFFICER.

   The fact that a patentee, when he made the invention of the patent, was general manager and a director of a corporation, does not give the corporation any right or interest in the patent, in the absence of an agreement therefor.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 125; Dec. Dig. § 93.*]

3. PATENTS (§ 168*)—CONSTRUCTION—ACQUIESCENCE IN RULING OF PATENT OFFICE.

   Where an applicant for a patent materially modifies a claim in accordance with a requirement of the Patent Office, it will not be construed as it would have been if it had not been so modified, even though the modification was made under protest, or the decision of the Patent Office was erroneous.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 243½–244; Dec. Dig. § 168.*]

4. PATENTS (§ 235*)—"INFRINGEMENT"—IDENTITY OF DEVICES.

   The performance by a device of the same function as the device of a patent does not alone constitute infringement, but it must also be the me-

chanical equivalent, performing the function in substantially the same
way.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 371; Dec. Dig. §
235.*

For other definitions, see Words and Phrases, vol. 4, pp. 3590-3594.]

5. PATENTS (§ 328*)—INFRINGEMENT—WATER-COOLED GRATES.

The Johnson patent, No. 778,749, for a grate, having hollow bars
adapted to be cooled by circulation of water through them, is not in-
fringed by the grate of the Parkison patents, No. 828,769 or No. 834,932.

Appeal from the Circuit Court of the United States for the District
of Colorado.

Suit in equity by the Johnson Furnace & Engineering Company
against the Western Furnace Company and J. Elmer Parkison. De-
cree for defendants, and complainant appeals. Affirmed.

Charles S. Thomas and A. J. O'Brien, for appellant.

George L. Wilkinson (Thomas F. Sheridan and Charles P. Abbey,
on the brief), for appellees.

Before SANBORN and VAN DEVANTER, Circuit Judges, and
WM. H. MUNGER, District Judge.

WM. H. MUNGER, District Judge. On the 21st day of August,
1903, Alfred E. Johnson made application to the United States Patent
Office for an improvement in grates. His application was allowed Sep-
tember 19, 1904, and patent No. 778,749 issued therefor December 27,
1904. On August 24, 1904, Johnson entered into a contract with one
J. Elmer Parkison, by the terms of which Johnson, in consideration
of the services theretofore rendered by said Parkison, and the cove-
nants and agreements on the part of Parkison therein contained, cove-
nanted and agreed to pay to Parkison one-eighth of all net profits de-
rived from the sale from rights to use or as royalties for the said in-
vention and all improvements thereon, and when said invention and
improvements, or any interest therein, should be finally sold or disposed
of, Johson agreed to pay Parkison one-eighth of the proceeds of such
sale, whether the same should be money, stocks, lands, chattels, or
securities of whatsoever kind, and Parkison, in consideration thereof,
agreed on his part to furnish consultation and his best advice concern-
ing Johnson's invention and improvements, together with all business
pertaining thereto at the solicitation of Johnson until such time as a
portion or all of said invention or improvements should be sold or dis-
posed of. It was stated that it was the intent of the instrument that
Parkison should have one-eighth of all net proceeds of said inven-
tion and improvements thereon in return for services already rendered,
together with advice and counsel to be given Johnson as therein pro-
vided. Parkison, who had for some time prior to the 1st day of
August, 1904, been in the employ of James F. Burns, solicited him
to purchase said patent; Parkison telling Burns that "the basis of
the whole business was the Johnson grate which nobody could get
around." Negotiations were had between Burns on one side, Parkison
and Johnson upon the other, Parkison being the more active of the
two, which resulted in a contract between Johnson and Burns on

August 1, 1904, which contract contained, among other provisions, the following, in substance: That as Johnson had invented a certain grate construction for gas producers, furnaces, fire boxes, and other like purposes, and had made application for letters patent thereon, the claims for which letters patent had been approved, and that Johnson was desirous of having said invention transferred to a corporation which should own, hold, and control the same for the purpose of being better enabled to raise funds for introducing, manufacturing, selling, renting, or otherwise handling for profit the said invention, it was agreed between Johnson and Burns that Burns should organize, or cause to be organized, with all possible dispatch, a corporation for the purpose before stated, and Burns was to advance all necessary funds which might be required to organize such corporation, make tests of said invention, Burns to pay, upon the execution of the agreement, $1,000, and within 30 days thereafter the further sum of $4,000, within three months thereafter the sum of $3,500, and within five months thereafter the sum of $3,500, a total of $12,000; and Johnson agreed, immediately upon the issuance of letters patent, to assign and transfer the patent, with all rights, benefits, and privileges accruing thereunder, to Burns or to such corporation. Johnson further agreed that any improvements or inventions appertaining to said invention which apply to any fire box and appliances, or which should be invented or discovered by him, he would assign to said corporation, the corporation to pay all necessary expenses for developing or obtaining any such improvements.

It was further agreed between Burns and Johnson that, upon the organization of the corporation, a certain portion of the stock should be set aside as treasury stock to be sold; that of the remainder Johnson was to receive one-fourth and Burns three-fourths. Immediately thereafter Parkison went into the employ of Burns for the purpose of carrying out the contract, and on the 28th day of December, 1904, the complainant corporation was organized for the purposes of and in pursuance of said agreement between Johnson and Burns. Parkison was a director and business manager of the corporation. Upon the issue of the patent, Johnson transferred the patent, and all interest therein, to the complainant corporation.

On July 1, 1905, Johnson made an application to the United States Patent Office for a patent for improvement in furnaces. The application was allowed, and patent No. 819,228 issued of date May 1, 1906, which was by Johnson assigned to complainant. December 2, 1904, Johnson made application to the United States Patent Office for a patent for an improvement in water cooling grates, which application was allowed, and patent No. 821,500 issued May 22, 1906, which patent was duly assigned to complainant.

Parkison continued as a director and business manager of complainant from the time of its organization until November, 1905. While Parkison was in the employ of complainant as director and business manager, he experimented at complainant's plant in devising an improved grate, which he finally succeeded in perfecting. After he severed his relations with the complainant company, he applied for a patent upon his improved grate, which was granted to him; such patent being No. 828,769. He subsequently applied for another improvement

and obtained patent No. 834,932. Upon leaving the employ of complainant, he immediately, in connection with his brother, E. H. Parkison, and one R. P. Russell, organized the Western Furnace Company, one of the defendants, for the purpose of manufacturing the improved grate under his (Parkison's) patent. It manufactured and sold some of the grates, and on July 17, 1906, complainant filed its bill in this case against said the Western Furnace Company and J. Elmer Parkison, charging them with infringement of its patents before mentioned, and praying that defendants be required to assign the two patents issued to defendant Parkison to it, and for an injunction and an accounting etc. The defendants answered the bill, denying the validity of complainant's patents assigned to it by Johnson, and denied any infringement by them. Upon the hearing complainant's bill was dismissed.

Very much of the evidence and argument on behalf of defendants has been devoted to the charge that complainant's patents were invalid, having been anticipated by prior patents, a large number of which were given in evidence, and that it possessed no novelty. A sufficient answer to this proposition is that as Parkison participated with Johnson in the sale of the patent to Burns for complainant, and Parkison received one-eighth of the consideration therefor, he, and all in privity with him, are estopped from now alleging the invalidity of the patent. Daniel v. Miller (C. C.) 81 Fed. 1000; Force v. Sawyer-Boss Mfg. Co. (C. C.) 111 Fed. 902; Time Tel. Co. v. Himmer (C. C.) 19 Fed. 322; Siemens-Halske Electric Co. v. Duncan Electric Mfg. Co., 142 Fed. 157, 73 C. C. A. 375.

It is conceded by appellees that this principle of estoppel applies to the assignor of a patent and to those having an interest in the patent itself. It is, however, urged that as Parkison did not have an interest in the Johnson patent, his interest being only to share in the proceeds of the sale, estoppel does not apply to him. Parkison was the principal actor in making the sale to Burns. He had until within a day or two been in the employ of Burns in a confidential capacity. He did not disclose to Burns that he was, to derive a benefit from the sale of the patent. He made the sale for Johnson. He received, and still retains, one-eighth of the proceeds from the sale. The estoppel against the assignor is not based simply upon the covenants expressed and implied in his conveyance. It rests upon the broad and equitable doctrine that one who receives and retains a portion of the fruits of a sale of a patent which he has assisted in making to another is estopped from claiming that such patent is invalid and worthless. This principle applies to Parkison as well as Johnson. The equitable garment fits each alike and they must each wear it.

Nor is such estoppel of Parkison to be evaded by his organizing the Western Furnace Company and operating through it. It and his associates interested in said corporation were in privity with him and are equally estopped. Force v. Sawyer-Boss Mfg. Co., supra; Siemens-Halske Electric Co. v. Duncan Electric Mfg. Co., supra; Mellor v. Carroll (C. C.) 141 Fed. 992; N. Y. Phonograph Co. v. Nat. Phonograph Co. (C. C.) 163 Fed. 534–538; Mathews Gravity Carrier Co. v. Lister (C. C.) 154 Fed. 490; Nat. Recording Safe Co. v. International

Safe Co. (C. C.) 158 Fed. 824; Continental Wire Fence Co. v. Pendergast (C. C.) 126 Fed. 381; Woodward v. Boston Machine Co., 60 Fed. 283, 8 C. C. A. 622.

The claim that complainant is entitled to a decree that the two patents issued to Parkison are held in trust for it and that it is entitled to an assignment of them is based upon the theory that as Parkison was both interested and instrumental in making the sale to Burns for complainant of the first patent issued to Johnson, that as he conceived and invented the two patents issued to him while in complainant's employ as director and manager, and as the written contract of sale from Johnson to Burns for complainant (of the consideration for which Parkison received one-eighth) provided that complainant should be the beneficiary of all future inventions respecting furnace grates for which Johnson should obtain a patent or patents, and such patent or patents were to be assigned to it, under such circumstances, the patents subsequently obtained by Parkison in equity belong to complainant.

The law is settled that, in the absence of an express contract or agreement, the relation of employer and employé, under whatever circumstances, short of a specific employment to make an invention, does not invest the employer with the entire property right in an invention of the employé. Pressed Steel Car Co. v. Hanson, 137 Fed. 403, 71 C. C. A. 207, 2 L. R. A. (N. S.) 1172; Hapgood v. Hewitt (C. C.) 11 Fed. 422, affirmed in 119 U. S. 226, 7 Sup. Ct. 193, 30 L. Ed. 369. In this case Parkison was in the employ of complainant as director and manager. His employment was general, as relates to those positions. There was no agreement that he should give to complainant the fruit of his inventive genius during the time that he was in its employ. The contract under which Johnson assigned the patents to Burns, for the use and benefit of complainant, only provided that complainant should have the benefit of future inventions and patents made and obtained by Johnson and did not give or undertake to give to complainant the benefit of any inventions relating to furnace grates which Parkison might procure. Hence complainant has no interest in the patents issued to Parkison, and is not entitled to an assignment of them.

During the negotiations leading up to and at the time of the sale of the Johnson patent to Burns for complainant, Parkison stated to Burns that "the basis of the whole business was the Johnson grate, which nobody could get around," and complainant insists that, as Burns made the purchase and invested a large sum in the manufacture of grates under the patent, defendants are estopped from denying infringement. Such statement, however, was but the expression of an opinion. At that time the application of Johnson for the patent was pending in the Patent Office, it had not been allowed, and it could not be known with certainty the breadth or extent to which its claims would be allowed.

We now come to the consideration of the question whether the grate manufactured by defendant under the Parkison patents is an infringement of the Johnson patents assigned to complainant, and in this we need only deal with the first of the Johnson patents, No. 778,-

749, for, if the defendants do not infringe this one, they clearly do not his subsequent ones.

The patent states that it is for a furnace grate, and it is clear from an examination of the specifications and the claims that the patent was for a mechanical device only, the function or abstract effect thereof not being the subject-matter of a patent. Corning v. Burden, 15 How. 252, 14 L. Ed. 683. In determining the breadth, scope, and proper construction of the patented device, we may, as evidence for that purpose, resort to the contents of the file wrapper of the Patent Office. In doing this we find that the original claim as made by Johnson was for a grate composed of hollow bars and cast portions detachably connected with the bars and means for passing water or other fluid through the bars for cooling purposes. This claim was rejected by the examiner because of the state of the prior art. Johnson then amended this claim, so that it would read that the cast portions were detachably connected with the bars below the top plane of the latter. This claim was rejected by the examiner, the examiner suggesting that, if the claim was amended so as to provide that the detachable sections were located wholly below the upper surface of the hollow bars, it would be allowable. Pursuant to this suggestion, the claim was amended and allowed in the following language:

"A grate composed of hollow bars adapted as a whole to be cooled by circulation of water therethrough and having parts detachably connected with the body of the bars and located wholly below the upper surface of the bars, said parts being provided with laterally-extending fuel-supporting fingers, the lower portions of said parts being protected from the heat by the hollow portions of the bars."

It is settled law that, where an applicant for a patent materially modifies a claim in accordance with a requirement of the Patent Office, it will not be construed as it would have been if it had not been thus modified. Phœnix Castor Co. v. Spiegel, 133 U. S. 360–368, 10 Sup. Ct. 409, 33 L. Ed. 663. And this is so though such modification was made under protest, accompanied by notice that the applicant would insist that the modification would be construed away after the grant of the patent (Thomas v. Rocker Spring Co., 77 Fed. 431, 23 C. C. A. 211; Macbeth v. Gillinder [C. C.] 54 Fed. 170), and such is the law even though the decision of the Patent Office was erroneous (Lapham-Dodge Co. v. Severin [C. C.] 40 Fed. 763); the reason being that, if the applicant acquiesces in the rejection of his claim and accepts a more limited one, he is bound thereby. If he is dissatisfied with the ruling of the examiner in respect to the breadth of his claim, the law provides for an appeal. The grant of a patent is the grant of a monopoly, and the public are entitled to the use of everything not covered by the patent. Consequently the complainants are limited to the exact structure described, and it cannot be given an interpretation broad enough to cover structures made in accordance with the claim as rejected. Keystone Bridge Co. v. Phœnix Co., 95 U. S. 274, 24 L. Ed. 344; Computing Scale Co. v. Automatic Scale Co., 204 U. S. 609, 27 Sup. Ct. 307, 51 L. Ed. 645; Brill v. St. Louis Car Co., 90 Fed. 666, 33 C. C. A. 213; Westinghouse v. Boyden, 170 U. S. 537–568, 18 Sup. Ct. 707, 42 L. Ed. 1136.

The quality of the Johnson patent is a grate composed of hollow water-cooled bars, adapted to be independently rocked to facilitate the shaking of the grate in removing the ash, so as not to disturb but a portion of the fuel bed, at the same time maintaining the bed in an approximately level condition, the water-cooled bars having attached thereto and wholly below the upper surface thereof, detachable parts containing laterally-extending fuel-supporting fingers cooled by the water passing through the supporting bars, thus prolonging the life of the fuel-supporting fingers, and the fuel-supporting portion of the grate being constructed in detachable sections or segments, so that single sections or segments may be replaced when necessary without having to replace the entire grate. Or, more concisely stated, the grate consists of supporting bars, which rock separately, so that the ash may be removed without any great disturbance of the fuel bed. These bars being hollow, water is passed through them for cooling purposes. To the bars are attached laterally-extending fingers to support the fuel bed, the finger portions being cooled by the water passing through the hollow supporting bars, thus prolonging their life, the portion of the grate containing the fingers attached to the bars being in sections or segments so that portions may be separately replaced or removed, the finger portions being attached to the bars wholly below the upper surface of the bars.

The grate manufactured by defendants consists of hollow bars through which water passes to cool the grate. These bars are each surrounded by a sleeve, to which is attached laterally-extending, fuel-supporting fingers. The bars do not support the sleeve; the sleeve being otherwise held in place. The sleeve rocks independently of the bar, the bars being connected together so that the water passes through one. into and through another. The sleeve is constructed in parts or segments, so that the parts may be separately replaced.

Complainant's and defendants' grates each perform the same functions. While it is necessary to constitute infringement that each should perform the same function, performance of the same function does not alone constitute infringement. Eames v. Godfrey, 1 Wall. 78, 17 L. Ed. 547; Burr v. Duryee, 1 Wall. 531–573, 17 L. Ed. 650; Westinghouse v. Boyden Power Brake Co., supra, 170 U. S. 568–569, 18 Sup. Ct. 707, 42 L. Ed. 1136.

To constitute infringement, defendants' grate must be the mechanical equivalent of complainant's; in other words, it must perform the same function in substantially the same way. The bars in complainant's grate support the fuel-supporting portions. The bars in defendants' grate do not support the fuel-supporting portions. In complainant's grate the fuel-supporting portions being attached to the bars, the bars are rocked to remove the ash. In defendants' grate the fuel-supporting portion is a sleeve surrounding the bar, detached from the bar, and rocking independently of the bar. In complainant's grate the bars are not connected together, but each bar has an intake and outlet for the water which passes through. In defendants' grate the bars are connected together so that the system of bars constituting the grate require but one intake and outlet for the water passing through them, and being thus connected cannot rock. These differ-

ences are such that one cannot be said to be the mechanical equivalent of the other, especially in view of the fact that Johnson, in obtaining his patent for complainant's grate, was required to limit his claim to portions attached to the bar wholly below the upper surface of the bar.

For these reasons, the decree is affirmed.