DALTON ADDING MACH. CO. et al. v. MOON-HOPKINS BILLING MACH. CO. et al.

(District Court, E. D. Missouri, E. D.   March 1, 1915.)

No. 4067.

1. PATENTS ⬨129—SUIT FOR INFRINGEMENT—ESTOPPEL TO DENY VALIDITY.

In a suit for infringement of a patent against a corporation and two individuals, who organized such corporation while application for the patent was pending, one of whom was the inventor and applicant, and the other of whom had knowledge of the invention and the application, and that the same had been assigned to complainants, all three defendants are estopped to deny the validity of the patent on the ground of anticipation or want of novelty.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 182½–186; Dec. Dig. ⬨129.]

2. PATENTS ⬨328—INFRINGEMENT—IMPROVEMENT IN ADDING MACHINES.

The Hopkins patent, No. 1,039,130, for improvements in adding and writing machines, *held* infringed.

In Equity. Suit by the Dalton Adding Machine Company and the Addograph Manufacturing Company against the Moon-Hopkins Billing Machine Company, John C. Moon, president, and Hubert Hopkins, vice president, of said company. On final hearing. Decree for complainants.

Banning & Banning, of Chicago, Ill., and Rippey & Kingsland, of St. Louis, Mo., for complainants.

Frederick R. Cornwall, of St. Louis, Mo., for defendants.

DYER, District Judge. This is a bill in equity, filed by complainants against defendants, charging infringement of letters patent of the United States, numbered 1,039,130, issued September 24, 1912, to the Addograph Manufacturing Company, and to the complainants as assignees of the defendant Hubert Hopkins. The facts touching the history of this patent are plain, and, as I understand them, well understood and practically undisputed. The invention covered by the patent

⬨For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

relates to improvements in adding and writing machines. The facts, as I gather them from the record and the argument of counsel, that led up to and finally culminated in the granting and issuance of the patent, are substantially as follows:

Application for this patent was filed in January, 1903. Its history, however, dates back to a period prior to the filing of the application. In December, 1901, one James L. Dalton was a merchant residing and doing business in Poplar Bluff, Butler county, Mo. Hubert Hopkins and his brother William at that time lived in St. Louis. Hubert Hopkins had theretofore made certain inventions in adding and typewriting machines, and had conveyed a half interest in the same to his brother William. The two were unable to manufacture and put on the market these inventions. In December, 1901, William Hopkins went to Poplar Bluff and there succeeded in interesting James L. Dalton and others of that city in financing the enterprise. The result was that a contract was entered into by and between the Hopkins brothers and Dalton and his associates by which the latter agreed to furnish $2,500—a part of which was to go to the former and a part of it was to be expended in the manufacture of the first machine, so as to demonstrate its practicability. Shortly after this agreement was made the Hopkins brothers built the machine in St. Louis, using a part of the $2,500 for that purpose.

The money provided for by this contract proved insufficient, and a second contract was made and entered into by the same parties on the 28th of June, 1902, according to the terms of which an additional sum of money amounting to $1,250 was put up by Dalton and his associates. In consideration of this sum Hubert and William Hopkins were to assign a half interest in the inventions to a company thereafter to be organized, and in which title to the inventions should be placed. The machine was completed in September, 1902, and is one of the physical exhibits in the case, and is marked "Original Hubert Hopkins Machine." This machine was exhibited in St. Louis in October, 1902. Various persons were invited to inspect it, for the purpose of obtaining further investments in the enterprise.

In December following the complainant the Addograph Manufacturing Company was organized, with a capital of $50,000, divided into 500 shares of $100 each; 249 shares were issued to Hubert Hopkins, and 1 share to his brother William. Thereafter, on the 24th of January, 1903, application for a patent was filed in the Patent Office. Three weeks after this application had been filed, Hubert Hopkins executed an assignment of the application to the Addograph Company. This assignment contained all the inventions claimed in the application. It requested that the patent be issued to the Addograph Company as assignee. Thereafter, on the 24th of September, 1912, the patent was issued, as Hopkins had requested.

It further appears from the evidence in the case that in 1903 Hubert Hopkins sold his stock in the Addograph Company to the American Arithometer Company. This stock, with a few additional shares it had bought, gave it control of the Addograph Company. This left Dalton and his associates in the minority, and practically without voice in its

control. It appears that Hubert Hopkins sold his stock for $5,000. To regain control, Dalton and his associates in the name of the Addograph Company had to and did pay to the Burroughs Machine Company (the successor of the American Arithometer Company) the sum of $40,000 for the stock Hopkins had sold for $5,000.

After the transfer of the stock by Hopkins to the American Arithometer Company the Addograph Company made a license contract with James L. Dalton for certain considerations, and a certain royalty to be paid the Addograph Company, giving to Dalton the exclusive right to make and sell the machines. After this there was organized the Adding Typewriter Company, to which Dalton assigned the license contract. After this, to wit, in 1909, the name of the Adding Typewriter Company was changed to the Dalton Adding Machine Company. This latter company thereupon became the exclusive licensee. These facts made it necessary to join the Dalton Company with the Addograph Company as a joint complainant.

[1] From the facts above stated it is claimed by the complainants that Hubert Hopkins is estopped from disputing the validity of the patent in suit. It is not only claimed that Hubert Hopkins is estopped, but that the Moon-Hopkins Billing Machine Company (one of the defendants) is also estopped. The facts relied upon to show an estoppel of the Moon-Hopkins Company are briefly these:

After Hubert Hopkins and his brother sold their stock in and left the Addograph Company, they, in June, 1903, went to John C. Moon (president of the Moon-Hopkins Company) and told him that Hubert Hopkins had made some inventions in adding and typewriting machines, and that he and his brother desired to interest Moon and his associates in the organization of a new company to manufacture and sell the inventions that Hubert Hopkins had made. On the 6th of July, 1903, a contract was entered into between Hubert Hopkins, William Hopkins, John C. Moon, and Carey C. Crawford, by which they undertook to manufacture the inventions Hubert Hopkins represented that he had made. The outcome of this arrangement was the organization of the Moon-Hopkins Billing Machine Company. It is insisted by the complainants that Moon and his associates knew of the rights of the complainants; that Moon visited the Holland Building in St. Louis and saw the machine on exhibition, and that it was fully explained to him by Hubert and William Hopkins.

The facts before recited are contained in the record, and have been carefully and correctly set forth, as I believe, by counsel for the complainants. The statement of the facts as above given is unnecessarily long, perhaps, but in my judgment proper to be stated to a full and fair understanding of the situation.

The question of estoppel raised by these facts is in my judgment the most important question presented in the case. From the facts disclosed in the record I am satisfied, and so find, that Moon and his associates had knowledge of the inventions of Hubert Hopkins, and were fully advised of all that transpired in reference thereto, and had knowledge of complainants' rights in and to the patent in suit.

These being the facts, as I find them to be, it would seem that the

defendants and each of them are and should be estopped from claiming that the patent in suit is invalid, either on the ground that it was anticipated by prior patent rights or on the ground that it possessed no novelty.

The case reported in 178 Fed. 822, 102 C. C. A. 267, Johnson Furnace Co. v. Western Furnace Co., to which my attention was called by counsel, seems to be controlling authority in this case. The Court of Appeals for this district, speaking through the presiding judge, said:

"Very much of the evidence and argument on behalf of defendants has been devoted to the charge that complainant's patents were invalid, having been anticipated by prior patents, a large number of which were given in evidence, and that it possessed no novelty. A sufficient answer to this proposition is that as Parkison participated with Johnson in the sale of the patent to Burns for complainant, and Parkison received one-eighth of the consideration therefor, he, and all in privity with him, are estopped from now alleging the invalidity of the patent."

The conclusion reached by me that the defendants are estopped from claiming that the patent in suit is invalid makes unnecessary the examination of the numerous patents set up in the defendants' joint and several answers. Whatever the state of the prior art may have been, it is not available as a defense in this action.

[2] The remaining question in the case is that of infringement. This I will not attempt to deal with, as expert witnesses and learned counsel have done. I shall content myself with simply announcing the result. The briefs and arguments of counsel on either side have been full and able. I will not undertake to reconcile the conflicting views of trained experts, nor the widely divergent views of learned counsel, but will state that my conclusions have been induced more from an examination of the physical exhibits in the case than from the testimony of experts and the arguments of counsel. The findings may be, in conclusion, summed up as follows:

1. The defendants are estopped from claiming the invalidity of the patent in suit.

2. Claims 7, 29, 32, 65, 113, 141, 142, 147, 153, 158, 170, 176, 185, 200, 235, 236, 238, 240, 241, 245, 246, 250, and 254 of the patent in suit have been and are infringed by the defendants' machine.

It follows from these conclusions that the complainants are entitled to a decree against the defendants; and it is so ordered.