MOON–HOPKINS BILLING MACH. CO. et al. v. DALTON'ADDING MACH.
CO. et al.*

(Circuit Court of Appeals, Eighth Circuit.   October 16, 1916.)

No. 4560.

1. PATENTS ⬤⟿202(2)—SUIT FOR INFRINGEMENT—ESTOPPEL OF ASSIGNOR.

While the assignor of a patent is estopped to deny that the invention presented a sufficient degree of utility and novelty to justify the issuance of the patent assigned, the estoppel goes no further, and does not preclude the defense of noninfringement, nor as a necessary corollary does it prevent him from insisting that the patent be put in its proper position in the art, and its meaning and scope determined accordingly.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 289; Dec. Dig. ⬤⟿202(2).]

2. PATENTS ⬤⟿178—RIGHT TO EQUIVALENTS—STATUS OF PATENT IN THE ART.

The right of patentee to the mechanical equivalents of his structure or device is proportional to the position of his invention in the art to which it relates.  If the invention is a pioneer or primary one, his right is broad and comprehensive; if but for a slight improvement, it is correspondingly narrow; and between the two extremes the measure of equivalents varies accordingly.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 254½; Dec. Dig. ⬤⟿178.]

3. PATENTS ⬤⟿168(1)—CONSTRUCTION—LIMITATIONS BY PROCEEDINGS IN PATENT OFFICE.

When an applicant for a patent inserts limitations and restrictions to comply with rulings of the Patent Office, he cannot afterward have a construction of his patent as though the limitations and restrictions were not contained in it.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 243½; Dec. Dig. ⬤⟿168(1).]

4. PATENTS ⬤⟿328—VALIDITY AND INFRINGEMENT—ADDING MACHINE.

The Hopkins patent, No. 1,039,130, for an adding and writing machine, as limited by the proceedings in the Patent Office, is of very narrow scope. As so construed, *held* not infringed.

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit in equity by the Dalton Adding Machine Company and another against the Moon-Hopkins Billing Machine Company and others. Decree for complainants, and defendants appeal.  Reversed.

For opinion below, see 223 Fed. 51.

Frederick R. Cornwall, of St. Louis, Mo., for appellants.

Thomas A. Banning, of Chicago, Ill. (Rippey & Kingsland, of St. Louis, Mo., and Samuel W. Banning, Thomas A. Banning, Jr., and Ephraim Banning, all of Chicago, Ill., on the brief), for appellees.

Before HOOK, Circuit Judge, and REED and BOOTH, District Judges.

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied January 19, 1917.

HOOK, Circuit Judge. This is a suit by the Dalton Adding Machine Company and the Addograph Manufacturing Company against the Moon-Hopkins Billing Machine Company and John C. Moon and Hubert Hopkins, its president and vice president, for infringement of patent No. 1,039,130, dated September 24, 1912, for a new and useful improvement in adding and writing machines. The plaintiffs were awarded a decree of injunction upon final hearing ([D. C.] 223 Fed. 51), and the defendants appealed. There are two questions in the case: (1) Whether defendants are estopped from questioning the patent in suit and if so the extent of the estoppel; (2) whether defendants infringe.

The question of estoppel arises in this way: Hubert Hopkins, one of the defendants, assigned his application upon which the patent in suit was issued to the plaintiff Addograph Company, in which he was interested. Soon afterwards he severed his connection with that company and participated in the organization of defendant the Moon-Hopkins Company. The latter commenced the manufacture of the machine held to infringe. Hopkins' application for the benefit of the Addograph Company, his assignee, was filed January 24, 1903. The patent was not granted until September 12, 1912. The efforts to secure the patent during the nine years intervening were conducted by counsel for the Addograph Company. Hopkins' application as first filed contained 62 claims; the patent finally granted contained 284. As against the assertion of estoppel defendants say the claims in Hopkins' original application are not the claims of the patent issued, and that the latter are not justified by the disclosures of the former. We shall not go into this, but shall assume that the defendants, corporate and individual, are estopped from contesting the validity of the patent in suit.

[1] The estoppel, however, does not preclude the defense of noninfringement, nor as a necessary corollary does it prevent defendants from insisting that the patent be put in its proper category, and its meaning and scope scrutinized accordingly. As was said by the Circuit Court of Appeals of the Sixth Circuit in Noonan v. Chester Park, etc., 39 C. C. A. 426, 99 Fed. 90:

"But this estoppel, for manifest reasons, does not prevent him from denying infringement. To determine such an issue, it is admissible to show the state of the art involved, that the court may see what the thing was which was assigned, and thus determine the primary or secondary character of the patent assigned, and the extent to which the doctrine of equivalents may be invoked against an infringer. The court will not assume against an assignor, and in favor of his assignee, anything more than that the invention presented a sufficient degree of utility and novelty to justify the issuance of the patent assigned, and will apply to the patent the same rule of construction, with this limitation, which would be applicable between the patentee and a stranger."

In Johnson Furnace, etc., Co. v. Western Furnace Co., 102 C. C. A. 267, 178 Fed. 819, we applied the rule of estoppel to a person who was not an assignor, but had negotiated the assignment and participated in the consideration. Upon examination of the file wrapper and con-

tents in the Patent Office, we found that the applicant had modified his claim to get it by, and held the plaintiffs were limited to the precise structure described, and were not entitled to a broad interpretation to cover structures made according to the claims rejected.

[2, 3] The right of a patentee to the mechanical equivalents of his structure or device is proportioned to the position of his invention in the art to which it relates. If the invention is a pioneer or primary one, his right is broad and comprehensive; if but for a slight improvement, it is correspondingly narrow. Between the two extremes the measure of equivalents varies accordingly. This rule is fundamental in the patent law. The plaintiffs' patented combination is far from being a pioneer. The field was largely occupied by Burroughs, Sandherr, Chamberlain, Helmick, and others; and the protracted, difficult effort to secure a patent on the Hopkins application, and the many changes made to conform to adverse rulings of the Patent Office, disclosed in the 400 pages of file wrapper and contents, show the very narrow character of the patent finally issued. That it is entitled to any substantial range of mechanical equivalents is quite inadmissible. It is settled that, when an applicant for a patent inserts limitations and restrictions to comply with rulings of the Patent Office, he cannot afterwards have a construction of his patent as though the limitations and restrictions were not contained in it. Computing Scale Co. v. Automatic Scale Co., 204 U. S. 609, 27 Sup. Ct. 307, 51 L. Ed. 645; Royer v. Coupe, 146 U. S. 524, 13 Sup. Ct. 166, 36 L. Ed. 1073; Phœnix Caster Co. v. Spiegel, 133 U. S. 360, 10 Sup. Ct. 409, 33 L. Ed. 663; Cotto-Waxo Chemical Co. v. Perolin Co., 107 C. C. A. 373, 185 Fed. 267.

[4] In the light of the above principles and conditions we turn to the patent in suit. Claims numbered 240, 241, 250, 65, 153, and 200 are stipulated as representative of all involved. In examining the prior art, to determine the scope of these claims, we have not found it necessary to go outside the history of the application in the Patent Office. Claim 240 is as follows:

"In an adding and writing machine, word printing mechanism having a platen, type carriers separate from the word printing mechanism, type on said carriers, hammers for driving the type against the platen aforesaid, a single ribbon serving said word printing mechanism and said type carriers, devices for drawing the hammers away from the type after operation, and tabulating mechanism for moving the platen to receive records in different vertical columns.

The specifications of the patent show the "devices for drawing the hammers away from the type after operation." The hammers are actuated by springs connecting them to the frames. "After each operation the hammers are restored to the position by a rod *91* which is carried by two arms *92* rigid with the shaft *85*, and rests under the rear ends of said hammers." The operation of the rod is then described. In defendants' machine there are no springs directly connected with the hammers. The actuating mechanism does not follow the

hammers through their entire movement, but after the blow is made the hammers have a slight rebound, and, by being weighted, gravity completes their restoration to place. The difference is substantial, both in mechanical construction and operation.

In claim 241 the second and third elements are:

"Trains of typewriting mechanism operable to print any desired words on said paper," and "means for causing each of said trains to print in upper and lower case type as desired."

It is sufficient to say that defendants' machine has no lower case type, and therefore no means of operating such type.

In claim 250 the fourth, fifth, and sixth elements are:

"Keys arranged in a keyboard," "a carriage controlled by said keys," and "mechanism controlled by said carriage to control the operation of the recording mechanism."

In defendants' structure the stops are set by a power-driven mechanism, and not directly by finger keys, as in plaintiffs'.

Claim 65 is as follows:

"In an adding machine, a carriage, movable parts in said carriage, means for adjusting said parts to represent numbers, a member mounted above said carriage, and means for moving said carriage in said member so that the movable parts in the carriage which had been adjusted to represent numbers will contact with and be restored to idle position by said member, substantially as specified."

The member referred to in the fourth and fifth elements of this claim is mounted above the carriage, and the restoration of the raised parts of the carriage to an idle position is done by passing the carriage under the superposed member. Other adding machines prior to the patent in suit had various devices to accomplish this result, and there was difficulty in having this claim, as well as others in question, allowed. In the defendants' machine the restoration of the movable parts is not accomplished in that way at all. Defendants' pins or movable parts are held in position by being latched over the upper portion of the frame, and the unlatching and restoration to idle position is done by cams, which disengage the projections of the latches from the pin frame. Complainants' device could not be used on defendants'. Of course, in a broad primary sense it might be said that every method of restoring to an idle position parts which had been raised in operation would be mechanically equivalent to complainants' device; but complainant was not given such a broad claim. The Patent Office, in view of the prior art, limited the patentee to the very narrow arrangement specified.

Again, the carriage which is the first element in claim 65 does not find a mechanical counterpart or equivalent in the pin frame of defendants' machine. They are mechanically different, and though in respect of the matter in question they accomplish the same result, still they do not do it in the same way. The first element of claim 153 is the carriage of claim 65, and what has been said regarding the difference applies also here. The seventh element of claim 200 is the carriage mentioned in 65 and 153.

There are other differences between the elements in the six claims above mentioned and the related parts of defendants' machine. Most of them are slight, it is true; but it is very clear that, if the same measure of equivalence which plaintiffs now invoke had been applied to Hopkins' application, in view of the prior art, the patent in suit could not have been granted.

The decree is reversed, and the cause is remanded, with direction to dismiss the bill.