HEMOLIN CO. v. HARWAY DYEWOOD & EXTRACT MFG. CO. et al.

(Circuit Court of Appeals, Second Circuit. April 19, 1905.)

No. 168.

1. PATENTS—VALIDITY—SUFFICIENCY OF DISCLOSURE.

When a patent contains a sufficient disclosure of the claimed invention, it will not be invalidated either by the failure of the patentee to state the causes which produce the result, or by a mistaken statement thereof.

2. SAME—INFRINGEMENT—PROCESS OF MAKING LOGWOOD EXTRACT.

The Austen patent, No. 491,972, for improvements in the art of making coloring matter from logwood, covering a process and the resulting product, which is a nonhydroscopic powder, was not anticipated, and discloses invention. Also *held* infringed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 131 Fed. 483.

W. P. Preble, Jr., for appellants.

Harold Binney, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge. The opinion of the court below accurately states the contentions of defendants, and discusses them in detail—especially that founded upon the Avery patent, which, as the expert for defendants admits, "is absolutely the only piece of literature * * * where it is especially mentioned that the use of nitrite of soda in the presence of water will modify the presence of resinous and other attractive matters in the logwood." The court reached the conclusion that the Avery patent did not disclose the invention of the patent in suit, and that defendants had infringed. The decision is questioned by defendants on the following grounds:

1. There is no evidence that hemolin, complainant's product, is made by the patented process. The answer to this is found in the uncontradicted testimony of complainant's witness Hopewell that it is made "by the use of nitrites under Dr. Peter T. Austen's patent."

2. There is no evidence that it is nonhydroscopic. But this evidence was furnished by experiments made with hemolin, the powder of the prior art, and defendants' powder, under a bell jar having therein a glass containing water, as a result of which it was shown that, while the powder of the prior art absorbed moisture and liquified, hemolin and defendants' powder remained unchanged.

3. The only novelty claimed for the patented powder is that it is

nonhydroscopic, but the fact is not stated by the patentee. The language of the specification refutes this statement. Referring to the tendency of prior products to "melt or run together," the patentee states that his invention "consists of a process for making a solid coloring matter from logwood, which is not affected by the extremes of atmospheric temperature, and which can be made and will continue and can be used in the form of a dry powder, * * * and which will allow of the same facility and accuracy in determining the proper proportions required."

4. "The Avery patent discloses the exact process of claims 1 and 2 of the patent in suit, except for whatever difference there may be between the use of nitrate of soda and of nitrite of soda." Even if this statement be assumed to be true for the sake of the argument, this difference is vital and sufficient. Defendants' expert was unable to state, as a result of his experiments, how much, if any, nitrite was formed by the reduction of nitrate as suggested in the Avery patent. But further objections to the Avery patent are (a) that it did not disclose or suggest a method of forming a powder, and therefore did not amount to a discovery of the development of a nonhydroscopic powder; (b) the Avery process of heat and pressure or use of acids would eliminate or decompose and destroy the nitrite, if any were found; (c) there is no suggestion of the beneficial result from the use of the nitrite in destroying or modifying the extracted matters, such result being the one specifically pointed out in the patent in suit.

5. Finally it is argued that nitrite of soda only oxidizes the extractive matters of the extract, that this property was well known, and therefore there was no invention. If this contention were shown to be correct, it would be fatal to the patent. But what was well known was that nitrite oxidized the coloring matter hæmatoxylin What was not known, and what Austen discovered, was that, if a complex logwood mixture was subjected by his process to the action of nitrite, a permanent nonhydroscopic powder could be produced. The theory of the process is that thereby the gummy matters were modified or destroyed. Defendants' answer to this contention is that there is no statement in the patent to this effect. But it is well settled that, when a patent contains a sufficient disclosure of the claimed invention, it will not be invalidated either by the failure of the patentee to state the causes which produce the operation, or by a mistaken statement as to the reasons therefor. The sufficiency of the disclosure and the novelty and utility of the result are the sufficient considerations for the grant. Here it appears that mere oxidation may be accomplished by various inexpensive materials, that nitrite is a comparatively costly product, and yet that by its use a new kind of powder is produced, which is so much better than those of the prior art that it is profitable to employ it. That complainant's process does in fact accomplish something more than mere oxidation was further indicated by experiments with defendants' samples before and after treatment with nitrite. Before treatment, like the powders of the prior art, they liquified on exposure to a humid atmosphere. After treatment they

became nonhydroscopic. As already shown, the powders of the prior art, which had been produced by oxidation of the extract, do not exhibit this nonhydroscopic quality.

We concur in the conclusion of the court below that:

"The essence of the invention is that, when logwood extracts are treated with nitrite of soda or potash under such conditions as to bring about a reaction between them, a new product, consisting of a permanent dry powder, soluble in cold water, and rapidly soluble in hot water, is produced, in which the gummy matters are expelled or rendered nonhydroscopic."

The prominent characteristic and effective feature of this product, which distinguishes it from those of the prior art, consists in the fact that it retains its permanent quality when exposed to atmospheric conditions, and for that reason possesses peculiar practical utility and commercial value.

The admissions of defendants' president quoted in the opinion of the court below, are conclusive upon the question of infringement.

The decree is affirmed, with costs.