KNICK v. BOWES "SEAL FAST" CORPORATION.

Circuit Court of Appeals, Eighth Circuit. March 21, 1928.

No. 7801.

1. Patents ⟨⟩16—Process is not rendered unpatentable because applicant has erroneous theory as to how patent works.

Process for rubber patches is not rendered unpatentable by fact that applicant had erroneous theory as to how process worked, since it was not theory, but process, that was patented.

2. Patents ⟨⟩168(2)—Limitations and qualifications imposed by examiner in allowing patent form part of contract with government, and cannot be removed or disregarded by courts.

Where no appeal was taken from decision of examiner of patents imposing limitations and

qualifications in allowing patent for process for rubber patches, such limitations and qualifications form part of contract with government, and cannot be removed or disregarded by courts.

**3. Patents ⟷175—Narrow patent for process for rubber patches is limited to correspondingly narrow range of equivalents.**

Patent for process for rubber patches which was very narrow, in view of qualifications or limitations imposed by examiner, was limited to correspondingly narrow range of equivalents.

**4. Patents ⟷328—1,489,477, for process for rubber patches held not infringed.**

Patent No. 1,489,477, covering process for rubber patches, *held* not infringed, in view of slight differences between it and defendant's process, where qualifications or limitations, imposed by examiner, in view of prior art, rendered patent very narrow.

Appeal from the District Court of the United States for the Western District of Missouri; Albert L. Reeves, Judge.

Suit by the Bowes "Seal Fast" Corporation against P. L. Knick, doing business as the Knick's Mend-Rite Manufacturing Company. Decree for plaintiff, and defendant appeals. Reversed.

Arthur C. Brown, of Kansas City, Mo. (V. E. Phillips, of Kansas City, Mo., on the brief), for appellant.

Joseph A. Minturn and Arthur M. Hood, both of Indianapolis, Ind. (Herbert A. Minturn, of Indianapolis, Ind., and Carson E. Cowherd, of Kansas City, Mo., on the brief), for appellee.

Before KENYON and BOOTH, Circuit Judges, and MUNGER, District Judge.

BOOTH, Circuit Judge. This is a suit for infringement of United States Patent No. 1,489,477, covering a "process for rubber patches." The complaint contained also a count for unfair trade. The patent was issued April 8, 1924, to Robert M. Bowes and Charles E. Bowes, and by them assigned to plaintiff, appellee herein. The court found that the patent was valid, and that defendant had infringed all of the claims thereof—four in number. It further found the defendant guilty of unfair trade. An injunction was decreed, and this appeal followed.

The main question raised in this court is whether the evidence sustained the finding of infringement of the patent.

• The specifications contain the following statement:

"The object of this invention is to remove the glazed surface always formed on the tube in the process of its manufacture, together with the rubber that has become deteriorated by atmospheric action, and to pro-

vide a clean new soft surface of substantially the same nature and condition as the protected surface of the patch to be applied, whereby there will be a perfect welding of the rubber tube and patch when the latter is applied and the surfaces are pressed together."

The first claim, which may be taken as typical, is as follows:

"1. The process of patching rubber surfaces consisting in buffing the surface to which the patch is to be applied in the presence of a rubber softener and solvent rubbing the softener and solvent into the opened pores, then scraping and thoroughly removing all softener and solvent, leaving the treated surface clean and dry, and applying a soft clean rubber patch to the prepared surface, the surface of the tube and of the patch both being free from gasoline or cement coating."

The steps in plaintiff's process as thus disclosed in claim 1 are: (1) Buffing the surface to which the patch is to be applied (a) in the presence of a rubber softener and solvent. (2) Rubbing the softener and solvent into the opened pores. (3) [Then] scraping [and thoroughly removing all softener and solvent, leaving] the treated surface (a) clean and (b) dry. (4) Applying a soft clean rubber patch to the prepared surface (a) [the surface of the tube and of the patch both being free from gasoline or cement coating].

All of these steps are presumed to be necessary to accurately disclose plaintiff's process. They were all included in the claim by the applicants themselves—those in brackets having been suggested or required while the application was before the Patent Office.

As shown by the quotation above from the specifications, the first three steps were believed by the applicants to result in making the prepared part of the surface of the tube "of substantially the same nature and condition as the protected surface of the patch." The order of sequence of the steps is: (1) Applying the softener and solvent; (2) buffing; (3) rubbing the softener and solvent into the opened pores; (4) scraping and thoroughly removing the softener and solvent. This order of sequence is indicated by the language of the claim. It is also directed by the language of the specification:

"To soften the surface of the punctured tube that it may be removed by buffing, we apply the following composition."

"* * * It is applied like paint to the area to be covered by a patch. A minute or two after the application is made the treated

surface is buffed with a wood-rasp or like acting instrument, to loosen the surface. Then the composition is worked with a knife-blade thoroughly into the pores of the rubber opened by the buffing process, after which it is entirely removed by scraping."

The suggestion is made that the words "in the presence of" do not necessarily indicate that the softener or solvent are to be applied before the buffing is done, since the definition of the word "presence" includes "being within sight or call, at hand." The suggestion is not persuasive. If any further proof were needed as to the order of sequence of the steps, such proof is found in the language of claim 2, which reads:

"The process of patching rubber surfaces which consists first in softening the surface to which the patch is to be applied with a suitable softening agent, then buffing the softened surface."

Proof is found also in the file wrapper, which shows that applicants attempted to have a new claim allowed worded like claim 1, but omitting the words "in the presence of." The attempt was unsuccessful. We have thus the steps in plaintiff's process as disclosed in claim 1, and the order of sequence of the steps.

Claims 3 and 4 contain the additional element or condition that the patch have its edge cut on a bevel.

### The Alleged Infringement.

The infringement relied upon is what is called "contributory infringement." It is claimed by plaintiff that defendant has furnished to the trade kits of materials similar to those furnished by plaintiff, and has instructed the purchasers how to use those materials in applying a rubber patch to the inner tube of an automobile tire; that those instructions given by defendant are followed by the purchasers, and in so doing they infringe the process patent of plaintiff. The materials furnished by plaintiff to the trade for carrying out the patented process are not patented, and plaintiff makes no claim of infringement against defendant for furnishing such similar materials to purchasers. The alleged infringement of defendant consists solely in procuring others to infringe plaintiff's patented process; and this is done by instructions or directions to his customers. The instructions or directions complained of are to be found on the containers of the patching materials. The first set of directions used was as follows:

No Cement
"USE   No Heat
No Gasoline

"Directions.

"1st. Thoroughly Buff The Tube With Buffer One Inch Around Hole Until Well Roughened.

"2d. Apply small quantity of Mend-Rite Solvent Cleaner. Work cleaner well into pores of rubber with edge of knife and then scrape off in moist condition, leaving a clean surface.

"3d. Cut a piece of Mend-Rite rubber ½ to 1 inch larger all around than puncture of hole. For a neat patch bevel the edges with scissors.

"4th. Remove cloth from adhesive side. Do not touch with fingers. Press or roll firmly into place with bottom edge of container."

The steps in the process thus directed are: (1) Buffing the surface to which the patch is to be applied. (2) Applying the solvent cleaner. (3) Working cleaner into pores of the rubber. (4) Scraping off in moist condition, leaving a clean surface. (5) Cutting patch (with bevel edge, if desired) and applying same.

The later directions found on defendant's kits read as follows:

"Directions.

"No. 1. Thoroughly roughen tube around hole with buffer where the patch is to be applied, removing all the glaze and soapstone.

"No. 2. Squeeze small quantity of Mend-Rite Special Combination Chemical Cement from lead tube upon roughened surface. Allow to dry. If in haste, for speedy results work fluid over the roughened surface with a knife blade or container lid, then scrape off.

"No. 3. Cut a piece of Mend-Rite Rubber sufficient to cover puncture or blowout.

"No. 4. Remove cloth from adhesive side, do not touch with fingers, use edge of container to roll patch firmly into place. Be sure the edges of patch are rolled down securely."

The steps in the process under these later directions are: (1) Buffing the surface of the tube where the patch is to be applied. (2) Applying the mixture called a "combination chemical cement" to the roughened surface. (3) Allowing this cement to dry; or working the mixture over the roughened surface and scraping off. (4) Cutting the patch and applying same.

That there are some steps in the process described in either set of directions which are similar to the steps disclosed in plaintiff's patent cannot be denied. That there are numerous differences between the patented process of plaintiff and either of those de-

scribed by defendant seems also clear. All three include a buffing. In plaintiff's process this is done after the softener and solvent has been applied; that is, the buffing is done to a softened surface. In defendant's process the buffing is done before the fluid is applied; that is, the buffing is done to a surface that has not been softened. Again, in plaintiff's process not only the softener and solvent is scraped off after being rubbed "into the opened pores," but it is "thoroughly" removed, leaving a surface not only "clean" but "dry." In defendant's process, under the later set of directions, the fluid mixture is allowed to dry and is not scraped off; or, under certain circumstances, it is worked in, and then is simply scraped off. Under the first set of directions it is scraped off in moist condition, leaving a clean surface. Under neither set of the defendant's directions is the fluid mixture directed to be "thoroughly" removed, leaving the treated surface "clean and dry." Again, in plaintiff's process it is expressly provided that, at the time of applying the patch, the surface of the tube and of the patch shall both be free from gasoline or cement coating. No such provision is carried out in defendant's process. It is true that in connection with the first set of directions of defendant is the statement, "Use No Cement; No Gasoline." The evidence shows clearly, however, that the fluid furnished by defendant in the kits sold to purchasers was in fact a cement, though defendant was unaware of it at the time of issuing the first set of directions; so that the process actually practiced involved the use of cement. In the later set of directions of defendant the fluid used is expressly called a cement.

Whether these differences between the patented process and defendant's process are of minor importance and not sufficient to avoid infringement, or are of major importance, and sufficient to avoid infringement, depends upon the status of plaintiff's invention relative to the prior art.

### The Prior Art.

The evidence shows without dispute that, commencing as early as two or three years prior to the filing of the application for the present patent, there were in more or less common use a number of different types of patches for inner tubes of automobile tires. Among them may be mentioned the following:

First, the cement patch. The process for applying the cement patch included buffing the place where the patch was to be applied, or cleaning it with gasoline, or both; appli-cation of cement to the roughened or cleaned surface; allowing the cement to dry; sometimes scraping off more or less of the cement; applying the patch. Various forms of patches were in use. Sometimes they were cut from a sheet; sometimes they were pre-cut by manufacturers; some of them had square edges; some had beveled edges.

Second, the gasoline or cementless patch. The process used in applying this patch included buffing and cleaning with gasoline the place on the tube where the patch was to be applied. The cement as a separate element did not appear, but a cement coating was already in place on the face of the patch. The place on the tube roughened by buffing and the face of the patch were both moistened with gasoline before the patch was applied.

Third. The Shaler or vulcanized patch. This was applied by a process involving heat, and need not be further described. A beveled patch was used here also.

It is to be noted, moreover, that the face of the Shaler patch was of vulcanizable rubber, and that the vulcanization was completed by the application of heat. In the gasoline or cementless patch, however, the face was of nonvulcanizable rubber.

Fourth. Another type of patch that was in use before the Bowes entered the field was the "combination gum type" of patch. This consisted of two plies; the back ply being of cured rubber, the face ply being of compounded, unvulcanized, but vulcanizable rubber. The Bowes as well as defendant made use of this type of patch.

### Scope of Plaintiff's Patent.

[1] Into this field already well occupied with patches and processes for applying the same the Bowes entered. Their main idea seems to have been to provide at the point on the tube where the patch was to be applied, "a clean new soft surface of substantially the same nature and condition as the protected surface of the patch * * * whereby there will be a perfect welding of the rubber tube and patch when the latter is applied and the surfaces are pressed together." The theory of the Bowes was erroneous. Applying a softener and solvent to the vulcanized rubber of the tube would not devulcanize the rubber as they supposed. However, it was not the theory, but the process that was patented; and the fact that the Bowes had an erroneous theory as to how their process worked would not render the process unpatentable. Eames v. Andrews, 122 U. S. 40, 55, 7 S. Ct. 1073, 30 L. Ed. 1064; Hemolin Co. v. Harway Dyewood & Extract Mfg. Co. (C. C. A.) 138 F. 54.

But the Bowes in preparing their claims described their process with considerable particularity, and, in order to get the claims allowed, they were obliged, in view of the prior art, to limit or condition the claims with still further particularity. Thus, to exclude the use of gasoline or cement, the words, "the surface of the tube and of the patch both being free from gasoline or cement coating," were introduced into each of the claims, and the examiner was assured "applicants soften the surface to be patched in a manner to cause a rubber patch to adhere without the use of a cement of any kind. In applicants' instructions, a copy of which accompanies this amendment, the fact that no cement or gasoline should be used is emphasized."

Another qualification or limitation was inserted in view of the prior art by introducing the words, "thoroughly removing all softener and solvent." And, finally, when the order of sequence of the steps of the process was sought by the applicants to be changed or eliminated, the examiner refused any alteration.

[2] No appeal was taken from the decision of the examiner as to these various limitations and qualifications. As a result, the patentees found themselves with a very narrow patent. And these limitations and qualifications form a part of their contract with the government, and cannot be removed or disregarded by the courts. White v. Dunbar, 119 U. S. 47, 52, 7 S. Ct. 72, 30 L. Ed. 303; Roemer v. Peddie, 132 U. S. 313, 10 S. Ct. 98, 33 L. Ed. 382; Hennebique Const. Co. v. Urban Const. Co., 182 F. 496, 498 (C. C. A. 8); Geo. E. Lee Co. v. Fort-ified Mfg. Co., 284 F. 315 (C. C. A. 8).

In White v. Dunbar, supra, the court in its opinion said:

"The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms. This has been so often expressed in the opinions of this court that it is unnecessary to pursue the subject further."

[3] It is true that the patent is entitled to a range of equivalents. But the patent is not a pioneer and entitled to a broad range of equivalents. It is a very narrow patent, and therefore limited to a correspondingly narrow range of equivalents. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 415, 28 S. Ct. 748, 52 L. Ed. 1122; National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 F. 693, 710 (C. C. A. 8);

Mallon v. Wm. C. Gregg & Co., 137 F. 68, 78 (C. C. A. 8).

And a range of equivalents will not be allowed which would give to a claim an enlarged scope that was expressly denied to it in the Patent Office. I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429, 47 S. Ct. 136, 71 L. Ed. 335; Brill v. St. Louis Car Co., 90 F. 666 (C. C. A. 8); Hennebique Const. Co. v. Urban Const. Co., supra; Thacher v. Transit Const. Co. (D. C.) 228 F. 905; Dry Hand Mop Co. v. Squeez-Ezy Mop Co. (C. C. A.) 17 F.(2d) 465; Wood v. Boylan, 19 F.(2d) 48 (C. C. A. 8).

Defendant's Process not an Infringement.

[4] Such being the character of plaintiff's patent, and such its position in reference to the prior art, we think that the narrow construction that must be placed upon it precludes a finding that defendant's process infringed, whether practiced in accordance with the first or later set of directions. Defendant's process uses a cement, and always has. The patented process of plaintiff excludes the use of cement. Defendant's process does not require that the fluid called by plaintiff "softener and solvent," and called by defendant "solvent cleaner" or "chemical cement," be "thoroughly" removed from the place on the tube where the patch is to be applied; and in practice it is not "thoroughly" removed. In defendant's process, the buffing is not done in the presence of the softener and solvent. Plaintiff's patented process requires it to be so done. In defendant's process, the buffing precedes the application of the softener and solvent or cement. Plaintiff's patented process requires the softener and solvent to be applied before the buffing takes place. And this sequence was deemed of importance, for the Bowes theory was that by first softening the surface of the tube and then buffing it the pores of the rubber were opened.

What we have said relative to claim 1 applies also to claims 2 and 4. Claim 3 introduces the added element of a bevel edge to the patch, and is much more general in describing the steps of cleaning and softening the part of the tube where the patch is to be applied. But the addition of the bevel edge to patches was old in the prior art; and the generality of the language as to the softening and cleaning steps is such as to render this claim invalid in view of the prior art, unless it be restricted by the language of the specifications. If so restricted, then what we have said relative to claim 1 applies; and defendant's process does not infringe.

We think the case is governed generally

by the principles announced in I. T. S. Rubber Co. v. Essex Rubber Co., supra; and in Automatic Appliance Co. v. McNicce Co., 20 F.(2d) 578 (C. C. A. 8). See, also, Ham Boiler Corp. v. Hugo (C. C. A.) 23 F.(2d) 163.

The decree of the court below, in so far as it adjudges that defendant's process is an infringement of plaintiff's patent, must be reversed.

It is so ordered.