POWER et al. v. MOLA WASHING MACH. CO.

No. 9101.

Circuit Court of Appeals, Eighth Circuit.

April 29, 1931.

C. Paul Parker, of Chicago, Ill. (Lionel V. Tefft, of Peoria, Ill., and Francis C. Downey, of Kansas City, Mo., on the brief), for appellants.

Eugene A. Thompson, of Syracuse, N. Y. (Denison & Thompson, of Syracuse, N. Y., and Henry S. Conrad, of Kansas City, Mo., on the brief), for appellee.

Before BOOTH and GARDNER, Circuit Judges, and MUNGER, District Judge.

BOOTH, Circuit Judge.

This is a patent suit in the conventional form, the defenses being invalidity of the patent and noninfringement.

The trial court dismissed the bill on the ground of noninfringement, the validity of the patent not being passed upon.

The patent involved is No. 1,288,694, issued December 24, 1918, to Simon E. Schroeder and Charles W. Bird, entitled "Driving Mechanism for Operating Devices."

The specifications state:

"Our invention has particular application to combined washing and wringing devices, but as here presented has special relation to the positioning of the wringer relative to containers used in connection with doing of a family washing.

"Our invention consists of driving parts applied to operate a wringer mechanism interchangeably in different locations relative to containers in different positions upon supporting frame. Said driving connections being associated with independent wringer supports, but having a common driving means."

Claims 10 and 11 only are involved. Claim 10 reads as follows:

"10. In a device of the class described, in combination, a support, a vertical drive shaft in said support, provided with a seating member at its upper end formed for clutch engagement with an opposing member adapted to be positioned relative thereto at varying angles about the axes thereof; an operating mechanism including a horizontally disposed shaft provided with a gear thereon; a vertically disposed short shaft alinable with the vertical drive shaft provided with a gear at its upper end adapted to engage the horizontal shaft of the operating mechanism, and fashioned for detachable engagement with the clutch member of the drive shaft at various angles of placement about the axis of said drive shaft, and manually removable therefrom, and a sleeve member suitably connected to the operating mechanism and supporting said short shaft and fashioned for seating upon the seating member of the drive shaft, whereby the operating mechanism may be lifted from its connection with the drive shaft and positioned at various angles about the axis of the latter without the removal of parts or attaching means."

Claim 11 reads as follows:

"11. In a device of the class described, in combination, a vertical drive shaft, a combined seating and clutch member, at its upper end fashioned to seat and engage opposing members of an operating mechanism at various angles about the axis of the drive shaft, an operating mechanism including a horizontal shaft provided with a gear thereon, and means on the operating mechanism centered with respect to the drive shaft and seating member thereon, and adapted for

detachable seating, and to establish driving connection between the seat and clutch members of the drive shaft and the gear of the horizontal shaft of the operating mechanism, but in a relation that will permit the operating mechanism to be lifted bodily from the seat and driving connection on the horizontal shaft and to be placed at varying angular positions about the axis of said driving shaft to establish driving connection at such varying angles thereabout."

The two main elements upon which the present suit turns relate to the support of the wringer in connection with the detachable driveshaft. They are thus stated in claim 10: "* * * A vertical drive shaft in said support, provided with a seating member at its upper end formed for clutch engagement with an opposing member adapted to be positioned relative thereto at varying angles about the axes thereof; * * * a sleeve member suitably connected to the operating mechanism and supporting said short shaft and fashioned for seating upon the seating member of the drive shaft * * *."

The patentee was well acquainted with the prior art covering wringers attached or attachable to washing machines.[1]

It is thus apparent from the excerpts that swinging wringers were old in the art.

If further proof is needed, it is found in Cooling, No. 1,340,328; in Schroeder, No. 1,048,215; and in Winger, No. 1,070,761.

Detachable drive shafts were also old in the art. Greenlief, No. 1,082,745, discloses one; Wenzelmann, No. 1,118,980, discloses one; and the evidence shows that the Dodge and Zuill wringer, in use before the application for plaintiff's patent, also disclosed one.

We come then to the combination of the elements as described in claims 10 and 11. These claims were added in the Patent Office. They were both rejected on the reference Wenzelmann. The claims were then modified and were again rejected on the references Greenlief and Winger. They were again modified and applicant's attorney stated as follows: "The new claims 10 and 11 have been drawn with Greenlief cited in view, and also Winger. *We have limited the claims to seating and seatable members and opposing clutch members, respectively on the drive shaft and the operating mechanism,* the same centering with respect to the drive shaft. The Greenlief structure has never been marketed while applicant's structure has been marketed by the S. E. Schroeder Manufacturing Company quite extensively. The margin of invention between the Greenlief and applicant's structure may not be great, but there is a wide enough difference to serve to commercialize applicant's structure while that of Greenlief has never been on the market to this applicant's certain knowledge." (Italics ours.)

It is apparent that claims 10 and 11 were carefully and closely examined in the Patent Office, and allowed only when narrowed and

---

[1] The specifications state:

"Our knowledge of the art relating to the subject to which this invention is directed advises us that it is common in the patent and in the practical art to associate a wringer in close connection with an agitator tub for convenience of work, and also to establish a common driving connection for both driven elements; also that reversing means for the wringer elements are old; and likewise it is old to associate the wringer with the agitator receptacle and a main support in such a manner that the wringer may be moved in different positions relative to said support and agitator receptacle.

"Types of machines of the class above noted are exemplified in structures where a wringer is mounted upon the agitator tub, and a common driving connection is provided for both the agitator tub and the wringer, and including a reversing arrangement for the latter; and similar machines, with the wringer supported in a manner to permit it to be swung around horizontally from a pivoted support. Machines of what is known as the 'platform type,' wherein the wringer is moved lengthwise upon a frame support for the working parts of the machine, including common driving connections for the agitator devices and the wringer, means for reversing the wringer and means for operating the wringer at determined spaced positions, and those in which the wringer is slidable upon a square driving shaft and may be driven in any position of placement; and also we have knowledge of machines comprehending the association of the agitating means and tub and the wringer under similar driving connections and relations as above noted, that distinguish it from the others in that the wringer supporting frame is mounted across the machine and pivoted in a manner to permit the frame and the wringer support thereon to be swung from the tub to a definite position of placement, and back again, at the will of the operator, and this without interfering with, or necessitating either breaking or establishing a different driving connection.

"It is with the view of improving upon these several types of washing machines that we have developed our present structure. * * *

"Our experience in the course of an extended manufacture of washing machines has taught us that any required movement of the wringer support, whether it be on a sliding frame, a frame swingable about a vertical pivot, or about a horizontal pivot, is objectionable, in that the movable parts in time lose their rigidity; that is, they become loosened and shaky, which leads, of course, to repair and readjustment, and likewise the wringer and gear supporting parts from the normal relation to their gear connections out of normal mesh, and hence causes wear and the expenditure of additional power over the normal, and generally disqualifies the machine for the highest grade of efficiency. We seek by our invention by and through the fixed and immovable supports for the wringer to avoid these disadvantages. It is a very small matter to simply lift the wringer from one position to the other, and generally is a more convenient method of changing its position, as compared with the plan followed out in the several types of machines heretofore specified."

limited to the form in which they now appear.

The same narrow construction must follow the claims after the patent is allowed.

In the case of Phoenix Caster Company v. Spiegel, 133 U. S. 360, at page 368, 10 S. Ct. 409, 412, 33 L. Ed. 663, the court said: "It is well settled that, where a patentee has modified his claim in obedience to the requirements of the patent office, he cannot have for it an extended construction which has been rejected by the patent office, and that, in a suit on his patent, his claim must be limited, where it is a combination of parts, to a combination of all the elements which he has included in his claim as necessarily constituting that combination."

In the case of Smith v. Magic City Kennel Club, 51 S. Ct. 291, 293, 75 L. Ed. ——, opinion February 25, 1931, the court said: "The case, in our opinion, thus calls for the application of the principle that where an applicant for a patent to cover a new combination is compelled by the rejection of his application by the Patent Office to narrow his claim by the introduction of a new element, he cannot after the issue of the patent broaden his claim by dropping the element which he was compelled to include in order to secure his patent. * * * The applicant having limited his claim by amendment and accepted a patent, brings himself within the rules that if the claim to a combination be restricted to specified elements, all must be regarded as material, and that limitations imposed by the inventor, especially such as were introduced into an application after it had been persistently rejected, must be strictly construed against the inventor and looked upon as disclaimers. * * * The patentee is thereafter estopped to claim the benefit of his rejected claim or such a construction of his amended claim as would be equivalent thereto."

To the same effect are Sargent v. Hall, etc., Co., 114 U. S. 63, 86, 5 S. Ct. 1021, 29 L. Ed. 67; Shepard v. Carrigan, 116 U. S. 593, 597, 6 S. Ct. 493, 29 L. Ed. 723; Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 429, 14 S. Ct. 627, 38 L. Ed. 500; Hubbell v. United States, 179 U. S. 77, 83, 21 S. Ct. 24, 45 L. Ed. 95; Weber Elec. Co. v. Freeman Elec. Co., 256 U. S. 668, 677, 41 S. Ct. 600, 65 L. Ed. 1162; D'Arcy Spring Co. v. Marshall, etc., Co. (C. C. A.) 259 F. 236; Computing Scale Co. v. Automatic Scale Co, 204 U. S. 609, 27 S. Ct. 307, 51 L. Ed. 645; Crawford v. Heysinger, 123

U. S. 589, 8 S. Ct. 399, 31 L. Ed. 269; Phoenix Caster Co. v. Spiegel, supra; Campbell v. American Shipbuilding Co. (C. C. A.) 179 F. 498; Johnson, etc., Co. v. Western Furnace Co., 178 F. 819 (C. C. A. 8).

Limitations and qualifications in the claims of a patent form part of the contract between the patentee and the government, and cannot be disregarded by the courts. Fay v. Cordesman, 109 U. S. 408, 421, 3 S. Ct. 236, 27 L. Ed. 979; Knick v. Bowes, etc., Corp., 25 F.(2d) 442 (C. C. A. 8), and cases cited.

In Harris v. Ladd, 34 F.(2d) 761, this court said at page 763: "It is well established that all words in the claim of a patent must be given effect if possible, and cannot be disregarded. If plaintiff has seen fit to make use of a limiting phrase, he must be bound by it. In Automatic Appliance Co. v. McNiece Motor Co., 20 F.(2d) 578, 581, this court said: ' * * * When an inventor in a crowded art has used limitative language in setting forth his claim, such language should not be rejected as surplusage, but should be considered as narrowing the patent,' citing numerous cases."

Comparing the elements of claims 10 and 11 of the patent, as thus construed, with the elements of the defendant's device we find that the patent device has "a vertical drive shaft in said support, provided with a seating member at its upper end formed for clutch engagement with an opposing member adapted to be positioned relative thereto at varying angles about the axes thereof."

The defendant's device also has a vertical shaft, but this shaft has no seating member at its upper end formed for clutch engagement with an opposing member. Defendant's seating member is a stationary tube and it is not formed for clutch engagement with anything.

In the patent device, the seating member at the upper end of the drive shaft is part of the drive shaft and necessarily revolves with the shaft. In defendant's device, this seating member is not a part of the drive shaft and does not revolve at all.

Again, the patent device has "a sleeve member suitably connected to the operating mechanism and supporting said short shaft and fashioned for seating upon the seating member of the drive shaft."

The defendant has a sleeve member, but it is not fashioned for seating on the seating member of the drive shaft, for the simple rea-

1012

son that the drive shaft has no seating member; but the sleeve member in the defendant's device is fashioned for seating on a stationary tube, which is entirely separate from the drive shaft.

Other minor differences might be pointed out.

██ It is contended that the same result is reached by defendant's device as by the patent device; but this does not establish infringement. Not only the result reached must be the same, but it must be produced by substantially the same means, acting in substantially the same way. McDonough v. Johnson-Wentworth Co., 30 F.(2d) 375, 383 (C. C. A. 8), and cases cited.

In the case at bar, there was a substantial difference, both in the means employed and in the mode of their operation.

Plaintiffs invoke the doctrine of equivalents and they are entitled so to do; but we think that doctrine can work no difference in the outcome of the instant case.

In Smith v. Magic City Kennel Club, supra, the court said: "The petitioner resorts to the doctrine of equivalents, insisting that the rigid horizontal arm of the respondents is to be treated as the equivalent of the arm of the patent, and that the limiting specifications of the claims may be ignored. What has already been said disposes of this contention, for where a patentee has narrowed his claim, in order to escape rejection, he may not 'by resort to the doctrine of equivalents, give to the claim the larger scope which it might have had without the amendments, which amount to disclaimer.'"

In Knick v. Bowes, etc., Corp., supra, this court said at page 446 of 25 F.(2d):

"It is true that the patent is entitled to a range of equivalents. But the patent is not a pioneer and entitled to a broad range of equivalents. It is a very narrow patent, and therefore limited to a correspondingly narrow range of equivalents. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 415, 28 S. Ct. 748, 52 L. Ed. 1122; National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 F. 693, 710 (C. C. A. 8); Mallon v. Wm. C. Gregg & Co., 137 F. 68, 78 (C. C. A. 8).

"And a range of equivalents will not be allowed which would give to a claim an enlarged scope that was expressly denied to it in the Patent Office. I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429, 47 S. Ct. 136, 71 L. Ed. 335; Brill v. St. Louis Car

Co., 90 F. 666 (C. C. A. 8); Hennebique Const. Co. v. Urban Const. Co. [(C. C. A.) 182 F. 496] supra; Thacher v. Transit Const. Co. (D. C.) 228 F. 905; Dry Hand Mop Co. v. Squeez-Ezy Mop Co. (C. C. A.) 17 F.(2d) 465; Wood v. Boylan, 19 F.(2d) 48 (C. C. A. 8)."

Our conclusion is that defendant's device does not infringe claim 10 or claim 11 of plaintiffs' patent. In view of this conclusion, it becomes unnecessary to discuss other questions in the case.

The decree is affirmed.